# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) ALLEN CONTRACTING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-676-JD |
| | ) | |
| (1) THE DRILLER, LLC, an Iowa limited | ) | |
| liability company; and | ) | |
| (2) HORIZONTAL BORING & TUNNELING | ) | |
| CO., a Nebraska corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE OF DEFENDANT THE DRILLER, LLC
## TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Amy M. Stipe, OBA No. 18361
John M. "Jake" Krattiger, OBA No. 30617
GABLEGOTWALS
211 North Robinson, Suite 1500
Oklahoma City, Oklahoma 73102
(405) 235-5500
(405) 235-2875 fax
astipe@gablelaw.com
jkrattiger@gablelaw.com
***Attorneys for Defendant***
***Horizontal Boring & Tunneling Co.***

May 29, 2020

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................2

RESPONSE TO ALLEN'S STATEMENT OF UNDISPUTED FACTS ......................................4

THE DRILLER'S ADDITIONAL STATEMENT OF UNDISPUTED
MATERIAL FACTS .............................................................................................................10

ARGUMENT AND AUTHORITIES ......................................................................................11

      I.      The Driller honored the exact terms of its Proposal to Allen ...............................11

              A.  Allen's promissory estoppel claim is legally meritless....................................11

              B.  The contract between Allen and The Driller was not "implied," it
                  was clearly expressed in writing and accepted by Allen ................................13

      II.     Allen's breach of contract claim is both procedurally and substantively
           meritless ...........................................................................................................15

              A.  Allen cannot be granted summary judgment on a non-existent
                  breach of contract claim................................................................................15

              B. Any claim by Allen that The Driller breached the Agreement fails
                  on the merits................................................................................................17

      III.    The Driller is entitled to damages for lost profits ..................................................23

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

Cases

*Allen v. W. H. O. Alfalfa Mill. Co.*,
272 F.2d 98 (10th Cir. 1959) ................................................................. 5, 6

*Anchor Sav. Bank, FSB v. U.S.*,
597 F.3d 1356 (Fed. Cir. 2010) ............................................................. 23, 24

*Baer Bros. Land & Cattle Co. v. Reed*
197 F.2d 569 (10th Cir. 1952). ............................................................. 23

*Bailey v. Tucker*,
533 Pa. 237, 621 A.2d 108 (1993)........................................................ 16

*Bickerstaff v. Gregston*,
1979 OK CIV APP 64, 604 P.2d 382 ..................................................... 3, 12

*Camino Real Mobile Home Park Partnership v. Wolfe*,
119 N.M. 436, 891 P.2d 1190 (1995)................................................... 24

*Campbell v. Indep. Sch. Dist. No. 01 of Okmulgee County, Okla.*,
2003 OK 73, 77 P.3d 1034 ................................................................... 17, 18

*Case v. State Farm Mutual Automobile Insurance Co.*,
294 F.2d 676 (5th Cir. 1961) ............................................................... 16

*Clark v. Nat'l Travelers Life Ins. Co.*,
518 F.2d 1167 (6th Cir. 1975) ............................................................. 16

*Cook v. Oklahoma Bd. of Pub. Affairs*
987 OK 22, 736 P.2d 140 ..................................................................... 21, 22

*Cook Associates, Inc. v. Warnick*,
664 P.2d 1161 (Utah 1983) ................................................................. 24

*Drennan v. Star Paving Co.*,
333 P.2d 757 (Cal. 1958)...................................................................... 14

*Ertel v. Nat'l Fire Adjustment Co.*,
152 F.R.D. 454 (W.D.N.Y. 1993) ......................................................... 16

*Eureka Water Co. v. Nestle Waters N. Am., Inc.*,
No. CIV-07-988-M, 2010 WL 11610611 (W.D. Okla. Mar. 26, 2010)............................ 2

*Florafax Int'l, Inc. v. GTE Market Res. Inc.*,
1997 OK 7, 933 P.2d 282 ............................................................................................ 24

*GEICO Gen. Ins. Co. v. Nw. Pac. Indem. Co.*,
2005 OK 40, 115 P.3d 856 .......................................................................................... 17

*Glendale Fed. Bank, FSB v. U.S.*,
239 F.3d 1374 (Fed.Cir. 2001) ............................................................................. 23, 24

*Home Stake Prod. Co. v. Trustees of Iowa Coll.*,
331 F.2d 919 (10th Cir. 1964) .................................................................................... 11

*John Price Associates, Inc. v. Warner Electric, Inc.*,
723 F.2d 755 (10th Cir. 1983) ........................................................................... 3, 12, 13

*Kraus Indus., Inc. v. Moore*,
No. CIV.A. 06-00542, 2007 WL 2744194 (W.D. Pa. Sept. 18, 2007) ........................... 2

*Lane v. F.S. Miller Lumber Co*
1924 OK 75, 222 P. 968 .............................................................................................. 23

*MDH Builders, Inc. v. Nabholz Construction Corp.*
17 S.W.3d 97 (Ark.App. 2000) ................................................................................... 14

*Otis Elevator Co. v. Midland Red Oak Realty, Inc.*,
483 F.3d 1095 (10th Cir. 2007) .................................................................................. 17

*Oklahoma City Federal Savings & Loan Assn. v. Clifton*,
1938 OK 390, 80 P.2d 283 .......................................................................................... 11

*Pitco Prod. Co. v. Chaparral Energy, Inc.*,
2003 OK 5, 63 P.3d 541 .............................................................................................. 17

*Richard E. Lambert, Ltd. v. Houston Constr. Co.*,
No. 1 CA-CV 080523, 2009 WL 2031920 (Ariz. Ct. App. July 14, 2009) ................... 14

*Schulte v. Apache Corp.*,
1995 OK 148, 949 P.2d 291 .......................................................................................... 2

*Silver v. Queen's Hosp.*,
53 F.R.D. 223 (D. Haw. 1971) .................................................................................... 16

*Tull v. Gundersons, Inc.*,
709 P.2d 940 (Colo. 1985).......................................................................................... 24

*Ware v. City of Tulsa, Okl.*,
1957 OK 148, 312 P.2d 946 ........................................................................................... 11

<u>Statutes</u>

Fed. R. Civ. P. 8(a)......................................................................................................16

Fed. R. Civ. P. 8(b)......................................................................................................15

Fed. R. Civ. P. 56.....................................................................................................16, 17

Fed. R. Civ. P. 56(a) ....................................................................................................16

LCvR 56.1(d) .................................................................................................................5

## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

(1) ALLEN CONTRACTING, INC.,     )
                                       )

               Plaintiff,       )

v.                                )     Case No. CIV-18-676-JD

(1) THE DRILLER, LLC, an Iowa limited  )
liability company; and              )
(2) HORIZONTAL BORING & TUNNELING )
CO., a Nebraska corporation,     )

              Defendants.   )

---

## DEFENDANT THE DRILLER, LLC'S RESPONSE TO
## ALLEN CONTRACTING, INC.'S MOTION FOR SUMMARY JUDGMENT

---

Defendant, The Driller, LLC ("The Driller"), submits this response to Plaintiff Allen Contracting's Inc.'s ("Allen") Motion for Summary Judgment [Doc. 65].[1]  Allen's Motion simultaneously seeks summary judgment on its only cause of action against The Driller – promissory estoppel – and on a cause of action it does not assert in its Petition [Doc. 1-2] – breach of contract – the latter of which precludes Allen's promissory estoppel claim by law.  In addition to admitting that it has no claim for promissory estoppel against The Driller, Allen's Motion demonstrates that it is asking this Court to enforce a version of the agreement against The Driller that never existed between these parties. For these reasons,

---

[1] Allen's Motion does not request that summary judgment by granted against the other defendant in this matter, Horizontal Boring & Tunneling Co. ("HBT"), against which Allen asserts theories of agency and alter ego liability.  For the reasons stated in HBT's Motion for Summary Judgment [Doc. 66], HBT is also entitled to summary judgment on the claims in Allen's Petition [Doc. 1-2].

as further addressed herein, The Driller requests that the Court deny Allen's Motion for Summary Judgment and grant summary judgment for The Driller on Allen's promissory estoppel claim, as requested in The Driller's Motion for Summary Judgment [Doc. 61].[2]

## INTRODUCTION

Allen's Motion for Summary Judgment [Doc. 65] requests summary judgment against The Driller on two irreconcilable legal theories: (1) promissory estoppel, and (2) breach of contract.  There are two fundamental problems with this request. First, Allen does not assert a cause of action for breach of contract against The Driller.  Allen's Petition [Doc. 1-2] only asserts a cause of action for promissory estoppel.[3]  *See id*. at ¶ 7 ("[T]he Defendants failed and refused to honor their written bid to Allen, which was relied upon and utilized by Allen in formulating its written bid to ODOT."); ¶ 8 ("Allen detrimentally relied upon Defendants' representation that they were willing and able to perform the horizontal boring work at the Project for their submitted bid price.")  Allen cannot be

---

[2] Given the overlap between the issues briefed by the parties, The Driller incorporates its Motion for Summary Judgment [Doc. 61] in response to Allen's Motion [Doc. 65].

[3] Some courts use the terms "promissory estoppel" and "detrimental reliance" interchangeably; others view detrimental reliance as an element of the cause of action for promissory estoppel.  *See, e.g. Schulte v. Apache Corp.*, 1995 OK 148, ¶ 6, n.6, 949 P.2d 291, 299, as modified on denial of reh'g (Nov. 18, 1997), opinion corrected, 957 P.2d 107 (Okla. 1998) ("Detrimental reliance and promissory estoppel are a part of this State's common law.") (internal citation omitted); *Eureka Water Co. v. Nestle Waters N. Am., Inc.*, No. CIV-07-988-M, 2010 WL 11610611, at *6 (W.D. Okla. Mar. 26, 2010) (discussing elements "to establish a claim for promissory estoppel/detrimental reliance"); *Kraus Indus., Inc. v. Moore*, No. CIV.A. 06-00542, 2007 WL 2744194, at *7 (W.D. Pa. Sept. 18, 2007) ("The Court notes that while some courts use the phrases promissory estoppel and detrimental reliance interchangeably, some courts construe detrimental reliance as an element of a cause of action for promissory estoppel.")  Regardless, Allen's Petition [Doc. 1-2] asserts a single cause of action that is not for "breach of contract."

granted summary judgment against The Driller on a breach of contract cause of action that has not been pleaded.

Second, Allen's decision to seek summary judgment on an unasserted breach of contract claim resulted in Allen making admissions that, by law, require granting The Driller summary judgment on the promissory estoppel claim.  Allen admits that its promissory estoppel claim is borne from the idea that "a contract did not come to fruition" [Doc. 65, Motion at p. 11 (citing *John Price Associates, Inc. v. Warner Electric, Inc.*, 723 F.2d 755 (10th Cir. 1983))], and alleges that Allen and The Driller's discussions resulted in an "implied contract."  [Doc. 65, Motion at 12-13].  The problem for Allen is that the evidence clearly shows The Driller's Proposal signed and accepted by Allen formed a written contract between these parties (the "Agreement"), which Allen admitted in its corporate representative testimony and in its own Motion for Summary Judgment.  [*See* Doc. 61-3, Depo. Tr. of Reed Greenhill ("Greenhill Tr.") at 37:12-16 ("Q. Would it be fair to say your testimony is that the proposal submitted by The Driller to Allen formed a written binding obligation between the two entities? A. Yes.")]; [Doc. 65, Motion at 13 ("Allen formally accepted TDL's proposal thereby creating an express contract between the parties.")]

Oklahoma law prohibits Allen from maintaining an equitable promissory estoppel claim against The Driller due to the admitted existence of an executed written contract between the parties. *See Bickerstaff v. Gregston*, 1979 OK CIV APP 64, ¶ 5, 604 P.2d 382, 384 ("Promissory estoppel is a doctrine (originally of an equitable nature but now a part of the common law) whereby a person who reasonably relies to his detriment on another's

promise is given by law the benefit of a contract **wherein an agreement did not come to fruition**." (emphasis added)). Allen's own briefing requires summary judgment be granted in favor of The Driller.

Finally, Allen's Motion is also based on the flawed premise that The Driller "not only expected to encounter sandstone (and shale) when they prepared [The Driller's] bid but included those costs in the unit pricing submitted to and relied upon by Allen." [Doc. 65, Motion at 3-4]. The evidence in this case clearly demonstrates that (1) The Driller explicitly excluded the excavation of rock from its Proposal, which Allen accepted to form the written Agreement between the parties; (2) sedimentary rock is present at the site where the boring was set to occur; and (3) The Driller's pricing was premised upon the presence of drillable dirt at the site. The Driller clearly informed Allen that it intended to honor its Proposal, as accepted, but Allen decided that was not enough and unilaterally terminated the Agreement without authority to do so.

For all of these reasons, Allen's Motion for Summary Judgment [Doc. 65] should be denied, and The Driller is entitled to summary judgment on Allen's promissory estoppel claim.

## RESPONSE TO ALLEN'S STATEMENT OF UNDISPUTED FACTS

1. Admitted in part and denied in part. The Driller is a trenchless construction company, which means it is in the business of installing utilities through the subsurface under rivers, railroads, highways, and interstates using trenchless methods including but not limited to horizontal directional drilling, pipe jacking, tunneling, and auger boring. Trenchless crossings installed by The Driller are used for the installation of utility services

4

such as water, sewer, electrical, communications and drainage on both private and public works projects. [*See* Doc. 61-1, Declaration of Brent Moore ("Moore Dec.") at ¶¶ 6, 9]. The remainder of paragraph 1 in Allen's Statement of Material Facts is not supported by citation to any evidentiary material as required by LCvR56.1(d).

2.      Admitted in part and denied in part.  Reed Greenhill ("Greenhill"), the Chief Estimator and Project Coordinator for Allen who was designated by Allen to serve as its corporate representative in this case, only solicited bids from two (2) subcontractors (including The Driller) for the portion of the Project to install the reinforced concrete pipe (RCP) drainage conduit.  [*See* Doc. 61-3, Greenhill Tr. at 86:18-87:7, 112:15-20].  The Driller's bid contained the Rock Exclusion (defined *infra*, at ¶ 12) and was approximately 30% less than the bid by the only other subcontractor, which did not include a similar rock exclusion in its proposal.  [*See* Greenhill Tr., *id.* at 86:18-87:7, 112:15-20, 112:2-5, 205:14-21].

3.      Admitted in part and denied in part.  The information available to the bidders on the subcontract project did not include full details about the subsurface at the exact location for the RCP drainage conduit. (*See* Exhibit 1, Greenhill Tr. at 70:25-71:20; 82:18-83:20). This is due in part to Allen's decision to change the methodology of the project from "open cut" to trenchless boring prior to receiving approval for the change from ODOT.  (*See id.* at 63:8-13; 64:12-16; 65:10-12; 65:21-66:6).[4]

---

[4] Further, the referenced "Solicitation Documents" are not fully defined or attached to Allen's Motion, and the alleged incorporation of ODOT and Federal Highway Administration ("FHWA") Standards and Specifications into the Solicitation Documents is not supported by the best evidence. *See Allen v. W. H. O. Alfalfa Mill. Co*., 272 F.2d 98,

4.      Admitted in part and denied in part.  The Driller did not have "several months to study the Solicitation Documents and to conduct any independent testing." [Doc. 65, Motion]. Allen contacted The Driller on December 21, 2015 to request a bid and provide "preliminary project information."  [*See* Doc. 61-2, Email].  Allen informed The Driller that "the Project is scheduled to bid January 21, 2016[,]" one month after Allen first contacted The Driller about the Project.  [*See id.*] ODOT did not award the Project after the first round of bidding and instead offered the Project for a second bid. Allen did not formally request a second bid from The Driller until April 7, 2016, with a due date of April 21, 2016.  (*See* Exhibit 2, April 7, 2016 Email).  The Driller submitted its same Proposal from the first round of bidding on April 18, 2016. [*See* Doc. 61-5, 61-6].  Furthermore, there is no evidence that The Driller or any other subcontractor was offered the opportunity to conduct "any independent testing it desired." [Doc. 65, Motion at ¶ 4, p. 5].  The Driller specifically admits that Kris and Brandon Young (the "Youngs") were responsible for The Driller's Proposal, including the pricing explicit Rock Exclusion inserted into the Proposal.

5.      Admitted, except to the extent it is unclear what Allen means by "responsible" bidder.

6.      Admitted.  Allen's acceptance and execution of The Driller's Proposal formed a written contract (i.e. the Agreement) between the parties.  [Doc. 61-7]; [Doc. 61-3, Depo. Tr. of Reed Greenhill ("Greenhill Tr.") at 37:12-16 ("Q. Would it be fair to say

---

99 (10th Cir. 1959) ("[T]he traditional best evidence rule proclaims that the writing is the best evidence of its contents, and testimony thereof is inadmissible if the writing is available.")

your testimony is that the proposal submitted by The Driller to Allen formed a written binding obligation between the two entities? A. Yes.")]; [Doc. 65, Motion at 13 ("Allen formally accepted TDL's proposal thereby creating an express contract between the parties.")]

7.     Admitted in part and denied in part. Allen's Proposed Subcontract [Doc. 61-9] was provided to The Driller with a May 20, 2016 memorandum (the "Memo") which provided that The Driller must sign the Proposed Subcontract as proffered and must "Not Modify" the Proposed Subcontract. [Doc. 61-8].  Per Article 13.b. of the Proposed Subcontract, the Proposed Subcontract would override and supersede the parties' executed Agreement.  [Doc. 61-9].  The Proposed Subcontract also contained a number of terms that materially differed from The Driller's accepted Proposal.  [*See* Doc. 61-18, The Driller's Response to Allen's Interrogatory No. 9]. The Driller's Proposal included the Rock Exclusion and did not include any agreement to execute Allen's Proposed Subcontract or to unilaterally prepare a work plan for Allen to submit to ODOT.  [Doc. 61-6].

8.     Admitted in part and denied in part.  The Driller requested and received permission from Allen to retain Terracon to perform additional soil bores at the specific location of the RCP drainage conduit project. [*See* Doc. 61-3, Greenhill Tr. at 142:21-143:2]. Despite approving Terracon to perform the additional work and being advised of the Terracon Report being completed and provided to The Driller, Allen never asked to see a copy of the Terracon Report or to discuss its results with The Driller.  (*See* Exhibit 1, Greenhill Tr. at 152:6-153:17).

9.    Admitted in part and denied in part.  The Driller admits that Greenhill contacted employee Kris Young "on several occasions" to discuss the status of The Driller's work on the Project. With respect to the remaining allegations in this paragraph, they are irrelevant with respect to Allen's sole cause of action for promissory estoppel.

10.    Admitted in part and denied in part.  The Driller specifically denies that there were any "broken promises and lack of action."  The Driller admits that Greenhill contacted former-employee Kris Young on several occasions to discuss the status of The Driller's work on the Project, and that Greenhill began having high-level communications about the Project with Brent Moore in late-September 2016.  (*See* Exhibit 1, Greenhill Tr. at 154:2-156:6).

11.    Admitted in part and denied in part.  Greenhill, on behalf of Allen, admitted that he learned of Kris and Brandon Young being terminated from The Driller in a call with Kris Young on October 11.  (*See* Exhibit 1, Greenhill Tr. at 159:20-160:6).  With respect to the October 27, 2016 letter, the actual statement made by Allen to The Driller was:

> I must receive the executed subcontract, together with an acceptable work plan by 12:00 p.m. CST on Monday, October 31, 2016. If I do not receive those documents, I will have no choice but to assume that [The Driller] does not intend to honor its agreement with Allen.
>
> In such event, Allen intends to file suit against [The Driller] (and, possibly HBT) for specific performance to enforce our agreement. Moreover, if the Project time constraints force Allen to hire another subcontractor to perform TDL's scope of work, we will look to TDL/HBT for payment of all sums incurred over and above the price proposed by TDL on April 18, 2016, as well as any resulting attorneys' fees, costs and other damages, including without limitation, damages for any delays caused by TDL refusing to honor its commitment.

[Doc. 61-12, Letter].   The written Agreement between Allen and The Driller did not authorize Allen to make these demands.  [Doc. 61-7].  Further, The Driller assured Allen that it intended to comply with the explicit terms of its Proposal.  [Doc. 61-13].

12.     Admitted in part and denied in part. The Driller's single-page Proposal stated in bold, italicized, and highlighted typeface:

> **_Drilling in ROCK, COBBLES, BOULDERS, SHALE or LIMESTONE is NOT included in this quote. ANY OBSTRUCTION that prevents progression of bore shall be removed on a time and material basis._**

(the "Rock Exclusion") [Doc. 61-6].  According to Terracon, the company hired by ODOT to perform all of the subsurface boring logs on the Project, sandstone is a "rock." (*See* Exhibit 1, Greenhill Tr. at 148:6-149:10, 193:17-22); [Doc. 61-11, Terracon Report at 5-12, 15]. The Driller knew sandstone was a "rock" when it inserted the Rock Exclusion into its Proposal.  (*See* Exhibit 3, Deposition Tr. of Brandon Young ("B. Young Depo. Tr.") at 46:14-17 ("Q. Did you consider sandstone to be rock when you bid projects? A. Sandstone is identified as a rock material in geological reports. . .")).  Shale, which is also a "rock," was also present at the site of the RCP horizontal boring project.  [Doc. 61-11, Terracon Report at 5-12, 15]. Without debate, drilling through sandstone and shale is excluded by the plain language of the Agreement.  [Doc. 61-6].  Further, Allen's decision to hire another subcontractor to perform the horizontal boring construction work did not result in "a loss of $855,789.50" because the rock excavation work performed by the other subcontractor was not included within the scope of work in The Driller's Proposal that was accepted by Allen to form the Agreement.  [Doc. 61-7].

13.     Denied.  The subsurface condition of the exact location of the RCP drainage conduit was not disclosed to The Driller at the time Allen requested its bid.  The Solicitation Documents did not include bores along the line of the RCP drainage conduit at the depths where the trenchless boring would occur.  (*See* Exhibit 1, Greenhill Tr. at 63:8-13; 64:12-16; 65:10-12; 65:21-66:6, 70:25-71:20; 82:18-83:20).  Further, Allen did not disclose to The Driller that it was soliciting bids that differed from ODOT's means and methods of construction without receiving preapproval from ODOT.  (*See* Greenhill Tr., *id.* at 134:4-23; 64:17-65:2).  There is absolutely no evidence to support Allen's claim that "[The Driller] anticipated encountering those conditions when submitting its bid to Allen and included all associated costs in its bid price."  [Motion at ¶ 13].  Finally, this allegation is irrelevant, even if true, because The Driller excluded drilling through rock from its Proposal and Allen accepted that exclusion without question.  (*See* Greenhill Tr., *id.* at 192:14-21).  It was Allen's job to review and understand The Driller's Proposal and ask The Driller if it had any questions about its conditions – especially those clearly set off by bold, italics and yellow highlighting. (*See* Greenhill Tr., *id*. at 90:24-91:6).

## THE DRILLER'S ADDITIONAL STATEMENT
## OF UNDISPUTED MATERIAL FACTS

In support of this Response and The Driller's request that this Court deny Allen's Motion for Summary Judgment [Doc. 65], The Driller adopts and incorporates the Statement of Undisputed Material Facts from its Motion for Summary Judgment, including all referenced exhibits. [Doc. 61, 2-10].

## ARGUMENTS AND AUTHORITIES

### I.     The Driller honored the exact terms of its Proposal to Allen.

Allen's lawsuit is an attempt to make The Driller pay Allen for work The Driller never agreed to perform.  Unfortunately for Allen, its Motion for Summary Judgment [Doc. 65] is a tacit admission that its promissory estoppel claim should never have been asserted.

The first line of Allen's argument – "[i]t is undisputed that [The Driller] submitted price quotes to Allen knowing and expecting Allen to rely upon them when formulating its bid to ODOT" [Doc. 65, Motion at p. 10] – is very much undisputed.  However, in making this argument Allen seeks to enforce only the part of the parties' Agreement that would be solely to Allen's benefit.  Allen would have this Court's accept the Proposal's pricing but disregard the remainder of The Driller's Proposal, including its clear and concise Rock Exclusion, among others, that undercut Allen's entire case.  Allen's request for this Court to use equity to reform the parties' Agreement should be rejected wholesale.  *See Home Stake Prod. Co. v. Trustees of Iowa Coll.*, 331 F.2d 919, 921 (10th Cir. 1964) ("[E]quity will not make a contract or lightly interfere with a contract the parties have made, and the party seeking reformation must prove his case by clear and convincing evidence." (citing *Oklahoma City Federal Savings & Loan Assn. v. Clifton*, 1938 OK 390, 80 P.2d 283; *Ware v. City of Tulsa, Okl.*, 1957 OK 148, 312 P.2d 946)).

### A.     Allen's promissory estoppel claim is legally meritless.

Allen's promissory estoppel claim is based on a fallacy – that The Driller made Allen a promise that at some point The Driller refused to fulfill.  This simply is not true, as Allen offers no evidence that The Driller ever refused to fulfill any of its *actual* promises

made in the Proposal [Doc. 61-6].  More devastating to Allen's promissory estoppel claim is that it completely ignores the fact that The Driller's "promise" became much more than a mere promise – it became a written contract between these parties (i.e., the Agreement [Doc. 61-7]) after Allen accepted it in writing.

Allen admits in its Motion that a written contract existed between these parties. [Doc. 65, Motion at 13 ("Here, it is undisputed that a valid contract was created between the parties . . .")]. Its corporate representative admits the same. [*See* Doc. 61-3, Greenhill Tr. at 37:12-16 ("Q. Would it be fair to say your testimony is that the proposal submitted by The Driller to Allen formed a written binding obligation between the two entities? A. Yes.")]. The existence of this written Agreement forecloses Allen from asserting a promissory estoppel claim, requiring that its request for summary be denied.  *See Bickerstaff v. Gregston*, 1979 OK CIV APP 64, ¶ 5, 604 P.2d 382, 384 ("Promissory estoppel is a doctrine (originally of an equitable nature but now a part of the common law) whereby a person who reasonably relies to his detriment on another's promise is given by law the benefit of a contract **wherein an agreement did not come to fruition**." (emphasis added)).[5]

The facts in Allen's cited case of *John Price Assocs., Inc. v. Warner Elec., Inc.* are easily distinguishable from the case at bar.  723 F.2d 755, 757 (10th Cir. 1983).  The subject construction project in *Warner* was on a federal government contract, and the subcontractor submitted its bid on preapproved forms supplied by the General Services Administration

---

[5] *See also* The Driller's Motion for Summary Judgment [Doc. 61, Motion Prop. I.A. at 11-14].

(GSA).  *See id.* There is no suggestion in *Warner* that the general contractor accepted the subcontractor's own bid form and formed a written contract with the subcontractor, as Allen admits it did in this case.  [Doc. 61-7].  There is also no suggestion that the *Warner* subcontractor included explicit scope exclusions in its bid, which the general contractor reviewed and accepted prior to incorporating the subcontractor's bid into its proposal, as Allen did in this case.  (*See* Exhibit 1, Greenhill Tr. at 90:12-91:6, 111:4-10, 192:14-21). Finally, the Court's holding in *Warner* actually supports The Driller's position, which is that a subcontractor's bid, once accepted by the general contractor, should be performed per the explicit terms of the bid, not as modified by either of the parties.  *See Warner*, 723 F.2d at 758.

Allen's remaining cited cases are all from other jurisdictions and stand for the same proposition as *Warner* – that a subcontractor cannot withdraw its bid once it is incorporated by a general contractor into a bid for a project. [Doc. 65, Motion at 11-12]. They do nothing to further Allen's argument that The Driller should have performed work it did not contract to perform, or that The Driller should now be ordered to cover Allen's costs for this work being performed by a third party. The Driller did not withdraw its Proposal after it was relied upon by Allen or refuse to perform pursuant to the terms of its Proposal. Thus, Allen's Motion for Summary Judgment should be denied.

**B.      The contract between Allen and The Driller was not "implied," it was clearly expressed in writing and accepted by Allen.**

This is not a case about an "implied contract," but an executed, written contract (the Agreement [Doc. 61-7]) with explicit terms and exclusions that Allen pretends do not exist.

As with the cases cited by Allen in the preceding section of its Motion [Doc. 65], the Arkansas appellate court case of *MDH Builders, Inc. v. Nabholz Construction Corp.* addresses a dispute where a written contract was not formed, and the subcontractor attempted to withdraw its bid after the general contractor received a contract from the project owner. *See* 17 S.W.3d 97 (Ark.App. 2000). These are not the same facts before this Court.

Instead, the present case involves a general contractor (Allen) attempting to invoke equity to ignore a material exclusion (the Rock Exclusion) and enforce terms against its subcontractor (The Driller) that do not actually exist in the parties' written Agreement. The Driller's Motion for Summary Judgment, at proposition I.B., analyzes several cases on this exact issue, all of which find in favor of a subcontractor against whom a general contractor attempts to enforce terms of a bid that were not actually offered. [*See, e.g.* Doc. 61 at 15-19 ("However, if the general contractor subsequently proposes a contract with different material and unreasonable terms, a subcontractor is not obligated to honor its bid." *See Richard E. Lambert, Ltd. v. Houston Constr. Co.*, No. 1 CA-CV 080523, 2009 WL 2031920, at *8 (Ariz. Ct. App. July 14, 2009) (citing the seminal case on the issue, *Drennan v. Star Paving Co.*, 333 P.2d 757, 760 (Cal. 1958))]. Allen's attempt to enforce an "implied contract" flies in the face of the actual, admitted, written contract that existed between these parties. The law is clear, and summary judgment against Allen is the only appropriate remedy.

**II.     Allen's breach of contract claim is both procedurally and substantively meritless.**

In Proposition II, Allen's Motion for Summary Judgment [Doc. 65, Motion at p. 13] turns this case on its head.  Allen's only cause of action against The Driller is a claim for promissory estoppel [Doc. 1-2, Petition] which, as demonstrated *supra*, only exists absent a written contract between the parties.  Nonetheless, Allen moves this Court to find that a written contract exists between Allen and The Driller, and to hold that The Driller breached this written contract. The Driller agrees with Allen's about-face, and alleged in its Counterclaim [Doc. 13] that an explicit written contract exists between these parties. Allen's recent change-of-heart requires granting The Driller summary judgment on Allen's promissory estoppel claim (its only claim in this case) because a claim for breach of contract is an admission that a promissory estoppel claim – which requires the absence of a contract – does not exist.

Furthermore, even if Allen had asserted a breach of contract claim, it would fail on the merits.  Allen is the party that breached the Agreement by unilaterally terminating it after attempting to enforce The Driller to perform contrary to its explicit terms – most notably the Rock Exclusion.  Allen's Motion must be denied.

**A.     Allen cannot be granted summary judgment on a non-existent breach of contract claim.**

A party cannot receive summary judgment on a claim that it has not plead. Fed.R.Civ.P. 8(b) requires a party seeking relief from the Court to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Allen's Petition [Doc. 1-2] only asserts a cause of action for promissory estoppel.  *See id*. at ¶ 7 ("[T]he

15

Defendants failed and refused to honor their written bid to Allen, which was relied upon and utilized by Allen in formulating its written bid to ODOT."); ¶ 8 ("Allen detrimentally relied upon Defendants' representation that they were willing and able to perform the horizontal boring work at the Project for their submitted bid price.")]

Having never asserted a claim for breach of contract prior to its Motion for Summary Judgment [Doc. 65], Allen failed to provide sufficient notice of such claim to The Driller. "Every plaintiff filing a complaint in a Federal District Court must prepare his complaint in conformity with Fed.R.Civ.Rule 8(a)." *Silver v. Queen's Hosp.*, 53 F.R.D. 223, 225 (D. Haw. 1971). "[T]here is no duty (on the part) of the trial court or the appellate court to create a claim which [a party] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975) (citing *Case v. State Farm Mutual Automobile Insurance Co.*, 294 F.2d 676, 678 (5th Cir. 1961) (internal quotations omitted)).  Allen's failure to properly plead a claim for breach of contract forecloses its request for summary judgment on this claim.

Fed.R.Civ.P. 56 likewise prevents a party from moving for summary judgment on a claim it has not asserted.  "A party may move for summary judgment, *identifying each claim or defense* — or the part of *each claim or defense* — on which summary judgment is sought."  *See* Fed.R.Civ.P. 56(a)(emphasis added).  A party must both *plead* and *prove* the elements of a claim to be granted summary judgment.  *See, e.g. Ertel v. Nat'l Fire Adjustment Co.*, 152 F.R.D. 454, 458 (W.D.N.Y. 1993) (citing *Bailey v. Tucker*, 533 Pa. 237, 621 A.2d 108, 119 (1993) (Zappala, J., concurring)).  Without the condition precedent

of pleading a claim, a party is foreclosed from receiving summary judgment pursuant to

Fed.R.Civ.P. 56.  Denial of Allen's Motion for Summary Judgment is required by rule.

**B. Any claim by Allen that The Driller breached the Agreement fails on the merits.**

In addition to the fundamental procedural fault with Allen's request for summary

judgment on a claim for breach of contract, its claim fails on the merits.  Allen is the party

to this contractual relationship which unilaterally terminated the Agreement without cause

or authority.  Its argument to enforce the Agreement against The Driller is principally

premised on parol evidence from extrinsic ODOT and FHWA documents that are not

referenced in The Driller's Proposal or present in the evidentiary record.  [Doc. 65, Motion

at 14-15].  As such, Allen's attempt to interpret the Agreement in this manner is precluded

by Oklahoma law and its Motion should be denied.

"If a contract is complete in itself, and when viewed as a totality, is unambiguous,

its language is the only legitimate evidence of what the parties intended. That intention

cannot be divined from extrinsic evidence but must be gathered from a four-corners'

examination of the instrument." *See Otis Elevator Co. v. Midland Red Oak Realty, Inc.*,

483 F.3d 1095, 1101-02 (10th Cir. 2007) (citing *Pitco Prod. Co. v. Chaparral Energy,*

*Inc.,* 2003 OK 5, 63 P.3d 541, 546; *GEICO Gen. Ins. Co. v. Nw. Pac. Indem. Co.,* 2005

OK 40, 115 P.3d 856, 858 ("Whether a contract is ambiguous and hence requires extrinsic

evidence to clarify the doubt is a question of law for the courts.") (quotations

omitted); *Campbell v. Indep. Sch. Dist. No. 01 of Okmulgee County, Okla.,* 2003 OK 73,

77 P.3d 1034, 1039 ("There is no need to resort to extrinsic evidence to ascertain

a contract's meaning where its language is clear and explicit. When a contract is reduced to writing, the parties' intent is to be ascertained from the writing alone whenever possible.")).

This Court should reject Allen's interpretation of excerpts from ODOT and FHWA documents that are not adopted or even referenced in the Proposal [Doc. 61-6] that Allen admittedly accepted to form the Agreement [Doc. 61-7].  There is absolutely no evidence in the record that "all parties recognized the Project was governed by ODOT and FHWA standards and specifications."  [Doc. 65, Motion at p. 14]. Even if this were true, there is nothing in the Agreement reflecting this supposed governance of The Driller's bid.

Furthermore, as the general contractor it was Allen's responsibility to ensure its own understanding of any subcontractor bids received and that the bids complied with any Project requirements before relying on them in their own bid to ODOT.   Allen repeatedly admits this fact:

> Q. Were you aware at that time that this proposal, in January of 2016, included an exclusion for drilling in rock, cobbles, boulders, shale, or limestone?
>
> A. As stated, it is on there.
>
> Q. Do you recall reviewing that provision and not having an issue with it?
>
> A. Didn't have a concern with it, no. In fact, it appeared to be a carryover note that's probably included on many of their proposals. Just in my experience, a lot of people have obstruction clauses in their quotes.
>
> Q. Would you agree with me that it's a general contractor's job to fully understand a bid from a subcontractor before they rely on it?

A. Yes.

Q. And that if there's anything about a bid that a general contractor doesn't understand, they should ask questions about that?

A. Yes.

(*See* Exhibit 1, Greenhill Tr, at 90:12-91:6).

Q. So at the time Allen used The Driller's value to include in its bid to ODOT, did you not fully understand that exclusion in the bid?

MR. GATEWOOD: Object to the form.

THE WITNESS: We knew that that exclusion existed in their quote. And we relied on their numbers for the bid.

(*See id.*, Greenhill Tr. at 111:4-10).

Q. When Allen viewed and accepted The Driller's quote and saw that it contained a rock exclusion, did Allen consider discussing that issue with The Driller at the time?

A. No. We didn't interpret it as an exclusion of the entire proposal at that time, and would have had no way to believe -- prior to this concern being raised -- that there was any issue to address.

(*See id.*, Greenhill Tr. at 192:14-21).  In other words, Allen reviewed The Driller's Proposal prior to incorporating it into its own bid for the Project to ODOT, and does not dispute the existence of the Rock Exclusion or other plain language included in The Driller's Proposal. Allen's position now is that it did not understand the Rock Exclusion to actually mean what it stated in plain language, but this argument is eviscerated by Allen's self-admitted obligation to confirm the meaning of the Rock Exclusion with The Driller if it had any questions prior to accepting The Driller's Proposal, forming the Agreement, and submitting a Project bid to ODOT.  Allen's failure to properly interpret and understand The Driller's

Proposal is what resulted in this dispute.  Allen's unilateral failure is not the fault of The Driller.

The argument in this section of Allen's Motion contains many other flaws.  First, Allen's assertion that "[The Driller] did not conduct any independent site investigation prior to submitting bids" (Motion at p. 15) manages to be both factually incorrect and completely irrelevant to the language in the Proposal accepted by Allen.  Allen's accusation that The Driller had from December 2015 until April 2016 to perform its own investigation of the project site is a misstatement of the facts in the record.  Allen admits that it contacted The Driller on December 21, 2015 to request a bid and provide "preliminary project information."  [*See* Doc. 61-2, Email].  Allen informed The Driller that "the Project is scheduled to bid January 21, 2016[,]" less than one month after Allen first contacted The Driller about the Project.  [*See id.*] ODOT did not award the Project after the first round of bidding and instead offered the Project for a second bid, but Allen did not request a second bid from The Driller until April 7, 2016, with a due date of April 21, 2016.  (*See* Exhibit 2, April 7, 2016 Email).  The Driller submitted its same Proposal from the first round of bidding on April 18, 2016. [*See* Doc. 61-5, 61-6].  As demonstrated, this argument is both incorrect and irrelevant.

Allen also changed the means and methods of the drainage conduit project without approval by ODOT and without disclosing its change to The Driller prior to soliciting bids. [*See* Doc. 61-3, Greenhill Tr. at 55:16-24, 60:14-19, 64:17-65:2, 134:4-23].[6] ODOT's plan

---

[6] This is even more damning for Allen considering the extent to which Allen complains that The Driller did not abide by the Solicitation Documents in preparation of the Proposal.

for the Project as "open cut" explains why there were no soil borings taken along the line where the drainage conduit was planned.  The composition of the subsurface would not be as critical for an open trench as opposed to a project where a tunnel boring machine with specific types of drill bits were planned to be used.  (*See* Exhibit 4, Deposition Transcript of Terracon Representative Norman Tan ("Tan Depo. Tr."), at 33:3-10; 34:12-15).  Furthermore, Allen knew of The Driller's request to conduct the additional soil borings and approved of the request, and then never asked to see the results [*See* Doc. 61-3, Greenhill Tr. at 142:21-143:2] – likely because Allen intended to hold The Driller to its bid price regardless of the conditions found at the site and the exclusions included by The Driller in the Proposal.

The *Cook v. Oklahoma Bd. of Pub. Affairs* case cited by Allen does not support its argument.  *See* 1987 OK 22, 736 P.2d 140, 145.  Allen's first citation from this case cuts directly against its own argument:  "Where one **agrees to do, for a fixed sum, a thing possible to be performed**, he will not be excused or become entitled to additional compensation because unforeseen difficulties are encountered." 736 P.2d at 146.  The Driller's promise to Allen was to perform the trenchless boring work if it did not include drilling through rock.  Once it was determined that the location of the drainage conduit would require drilling through sedimentary rock, The Driller was no longer able to perform pursuant to its Proposal.  As such, The Driller offered to do the rock excavation work on a time and material basis if Allen would assure that it would pay [Doc. 61-13], but Allen never made that assurance and instead terminated the Agreement.  [Doc. 61-14].

21

Furthermore, the facts in *Cook* do not apply here: (1) there was no "admonishment" by Allen to study the subsurface conditions – in fact The Driller was told the location would cut like "hard dirt" [Depo. Tr. of Kristine Young at 120:21-121:13] and there were no subsurface borings of the exact location of the conduit provided (*See* Exhibit 1, Greenhill Tr. at 70:25-71:20; 82:18-83:20); and (2) there was no significant amount of time provided for The Driller to perform its own testing – the first request for bids was December 2015 and the first bid was due January 2016 – the second request for bids occurred over a couple weeks in April 2016. [*See* Doc. 61-2, Email]; (*See* Exhibit 2, April 7, 2016 Email). Finally, there is no allegation that the soil information actually provided misrepresented the site, only that it did not provide the information for the exact location of the drainage conduit, which Allen admits would have been helpful. (*See* Exhibit 1, Greenhill Tr. at 66:2-6 ("Q. Would you agree with me that on any construction project, it's important to have as clear an understanding of the subsurface conditions as possible before taking on a project? A. It's certainly beneficial.")]

Lastly, Allen points to nothing indicating that The Driller did not intend to perform under the terms of the Proposal.  To the contrary, The Driller attempted to perform by adjusting its initial projection of drilling through dirt to drilling through rock (an adjustment contemplated by the Proposal). Yet, after asking Allen to agree to allow The Driller to adjust its work and be compensated on a time and material basis, Allen unilaterally terminated the Agreement and hired another subcontractor to perform.

In conclusion, Allen requests summary judgment on a cause of action it has not asserted and bases its improper request on facts that do not exist in the record and

inapplicable legal authority.  The contract between these parties was explicit and clear, The Driller expressed its intent to perform, and Allen terminated the contract.  Allen's request for summary judgment on a non-existent breach of contract claim should be denied.

**III.        The Driller is entitled to damages for lost profits.**

Allen's position that The Driller is not entitled to lost profits because it did not "substantially perform" the Agreement before it was unilaterally terminated by Allen is clearly contrary to law. [Doc. 65, Motion at 19]. A subcontractor is not required to substantially perform a contract in order to assert and recover on a claim for breach of contract.  Such a rule would create a scenario where general contractors could unilaterally terminate contracts with subcontractors prior to performance, and would establish a system of completely unequal bargaining power.

Further, Allen's cited case law does not require "substantial performance" in order to make a claim for lost profits or limit a subcontractor filing a breach of contract claim to situations where it has been damaged even further by a breaching general contractor. The 1924 case of *Lane v. F.S. Miller Lumber Co.* allows a contractor who has substantially performed to recover on a breach of contract, but in no way limits claims for breach of contract to those instances where substantial performance has occurred.  *See* 1924 OK 75, 222 P. 968, 969. Further, the case of *Baer Bros. Land & Cattle Co. v. Reed* relates to a partially performed contract to purchase cattle and does not support the "substantial performance" argument proffered by Allen.  *See* 197 F.2d 569, 573 (10th Cir. 1952).

"Damages for breach of contract are  designed  to  make  the  non-breaching  party whole. One way to accomplish that objective is to award 'expectancy damages,' *i.e.*, the

benefits the non-breaching party would have expected to receive had the breach not occurred." *Anchor Sav. Bank, FSB v. U.S.*, 597 F.3d 1356, 1361 (Fed. Cir. 2010) (citing *Glendale Fed. Bank, FSB v. U.S.,* 239 F.3d 1374, 1380 (Fed.Cir. 2001)). All a party "must show for the recovery of lost profits is sufficient certainty that reasonable minds might believe from a preponderance of the evidence that such damages were actually suffered." *See Florafax Int'l, Inc. v. GTE Mkt. Res., Inc.*, 1997 OK 7, 933 P.2d 282, 296 (citing *Cook Associates, Inc. v. Warnick,* 664 P.2d 1161, 1165 (Utah 1983); *Camino Real Mobile Home Park Partnership v. Wolfe,* 119 N.M. 436, 891 P.2d 1190, 1200-01 (1995) (fact of lost profit damage must be shown by preponderance of the evidence); *Tull v. Gundersons, Inc.,* 709 P.2d 940, 943 (Colo. 1985) (same)). "This requirement of proof applies to the fact of lost profits, the causation of lost profits and the amount of lost profits." *See id.* (citing *Cook*, 664 P.2d at 1165). Each of these elements is established in favor of The Driller in its Motion for Summary Judgment. [Doc. 61, Prop. II.D. at 25-26].

Finally, taking Allen's argument as true, if a party could not recover damages for breach of contract prior to any performance, then Allen would likewise be precluded from recovering any damages in this matter (to the extent it actually asserted a breach of contract claim, which it did not). Allen seeks judgment in the amount of $855,789.50 from The Driller, which is the amount of money Allen allegedly paid to another contractor to perform the work The Driller did not agree to perform. [Doc. 65, Motion at 19]. Allen offers no authority in support of its attempt to recover contract damages for money paid to a third party as a result of a contract that it unilaterally terminated. Likewise, Allen offers no

evidence of its own "substantial performance" that would allow Allen to recover under its limited view of contract damages.   Allen's own theory about substantial performance precludes Allen from recovering any damages based on breach of contract.

## CONCLUSION

Allen's admitted inexperience on this type of project, involving extensive trenchless boring work outside of what the ODOT specifications provided, resulted in Allen putting itself in a bind on the Project. [*See* Doc. 61-3, Greenhill Tr. at 19:3-6]. Allen's attempt to blame The Driller for its own failures, and request that this Court invoke its equity to award Allen money for work that The Driller never agreed to perform, and which is specifically excluded from the Agreement, should be rejected wholesale.

For the reasons stated herein, The Driller requests that this Court deny Allen's Motion for Summary Judgment [Doc. 65] and grant The Driller the relief requested in its Motion for Summary Judgment [Doc. 61].

Respectfully submitted,

/s/ John M. "Jake" Krattiger
Amy M. Stipe, OBA No. 18361
astipe@gablelaw.com
John M. "Jake" Krattiger, OBA No. 30617
jkrattiger@gablelaw.com
GABLEGOTWALS
211 North Robinson Avenue
One Leadership Square, Suite 1500
Oklahoma City OK 73102
Telephone       405-235-5500
Facsimile       405-235-2875
***Attorneys for the Defendants***

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2020, the foregoing document was filed with the Clerk of Court, and will be transmitted to the following ECF Registrants:

Robert L. Magrini
Evan B. Gatewood
Christopher D. Skelton
HAYES, MAGRINI & GATEWOOD
1220 North Walker, Suite 100
Oklahoma City, Oklahoma 73103
*Attorney for the Plaintiff*

<u>/s/ John M. "Jake" Krattiger</u>
John M. "Jake" Krattiger